In the Matter of STATE COMMISSION FOR HUMAN RIGHTS, Respondent, v. MELL FARRELL, Individually and as President of Local Union 28 of Sheet Metal Workers' International Association of Greater New York, et al., Appellants, and NATHANIEL GOLD et al., Respondents.

First Department, November 18, 1965.

*Samuel Harris Cohen* of counsel (*Cohn & Glickstein,* attorneys), for appellants.

*Sidney Kant* of counsel (*Henry Spitz* with him on the brief; *Henry Spitz,* attorney), for State Commission for Human Rights, respondent.

*Benjamin Rosenthal* for Seymour Zwerling, respondent.

*Shirley Adelson Siegel* of counsel (*Roger N. Beilenson* and *Earl Roberts* with her on the brief; *Louis J. Lefkowitz, Attorney-General*).

*Per Curiam.* In this proceeding to enforce an order of the State Commission for Human Rights — the object of which was to compel the parties to cease and desist from discriminating against Negroes in the selection of sheet metal apprentices — the court ordered that a new class of 65 apprentices be established by October 30, 1965. The appellants appeal from this order dated July 26, 1965. The appellants do not object to that portion of the July order which directs that a new class of apprentices be appointed, but only to that portion which directs that such class consist of 65 apprentices. They urge that the court had no right to direct the number of apprentices to be employed and insist that any dispute with respect to that question must be decided by the impartial arbitrator, pursuant to the outstanding arbitration agreement. We affirm the order appealed from without passing on the merits of that position. We do so because it appears that all of the parties agreed to the formation of a new class consisting of 65 apprentices as one of the measures to effect a discontinuance of the complained of discriminatory practices.

The initial order entered in this enforcement proceeding was dated November 6, 1964. It confirmed the findings of discrimination made by the State Commission for Human Rights. It also set up ground rules designed to eliminate the condemned discriminatory practices. That order was made and entered upon the consent of all the parties — a consent arrived at through the arduous, painstaking and patient effort of the court, and

made possible through the commendable co-operation of the parties. In furtherance of that order the parties made another agreement, the substance of which is best set forth in the language of Judge MARKOWITZ, as follows: " In implementation of the order of this court dated November 6, 1964, the parties have reported that they have agreed upon the institution of an apprenticeship class of 65 to commence not later than March 15, 1965. A stipulation to that effect has been submitted, approved by the court, and marked ' So Ordered '. The foregoing is reasonably fair and will generally effectuate the purposes of the order herein. It is also expected that henceforth new classes will be instituted on a periodic basis and will generally be selected to effectuate the public policy of this State as reflected in the order herein entered ". .

The first class of 65 was organized pursuant to that agreement. While it was contemplated " that henceforth new classes will be instituted on a periodic basis ", the union refused to organize a second class that year as theretofore had been the custom. It subsequently did agree to do so but declined to provide for the admission of 65 members.

There is no real dispute as to the understanding that two classes were to be formed during the year. The persistent refusal of the union to organize a second class consisting of 65 apprentices resulted in the order of July 26, 1965 directing that the second class be organized on or before October 30, 1965, and that that class consist of 65 members. It is that order with which this appeal is principally concerned.

Of course, if the parties agreed to have the second class consist of 65 applicants there is no basis for this appeal. We find that there was such agreement. The record supports such a finding. At the outset we have a sworn statement by Benjamin Rosenthal — one of the attorneys who participated in the negotiations leading to the original order — to the effect that to the best of his recollection " [t]he statement was made that the total number of apprentices to be enrolled during 1965 would be 130." Sixty-five having been enrolled in the first class, it would follow that the parties contemplated that the second class would consist of a like number. Secondly, Judge MARKOWITZ makes the clear statement that " the arrangement for two apprenticeship classes of 65 each for the year 1965 was reached by agreement of all the parties involved." Lastly, we look to the affidavit of Sidney Cohn — of counsel for the appellants who resist the direction that the class consist of 65 — wherein he says: " There was unquestionably a great deal of discussion as to one class of

130, or two classes of 65. Judge MARKOWITZ has stated, both in chambers and in open court that he had a distinct recollection that there was an understanding that two classes of 65 each would be formed. Since I have no independent recollection, and Judge MARKOWITZ *does* have an independent recollection, I feel honor-bound not to dispute the recollection and I will not do so."

In the light of the above we can come to no other conclusion than to find that there was an agreement by all of the parties to establish a second class of 65.

However, the appellants strenuously argue that "The determination of class size by the court below constitutes improper judicial interference with the resolution of labor disputes by the arbitration process." They urge that the size of classes as distinguished from standards of admission has nothing to do with the discriminatory practices condemned and, consequently, any dispute with respect thereto must be resolved by the impartial arbitrator chosen pursuant to the agreement between the parties. Of course, if the number of apprentices to be admitted bears no relationship to the enforcement of the commission's order against discrimination, or to the establishment of nondiscriminatory practices to remedy the condition of which complaint was made, then a dispute with respect thereto would constitute an economic dispute to be decided by the impartial arbitrator. However, if any such relationship should be found, then the arbitration agreement cannot bar the court from making any order found necessary to enforce the cease and desist order of the commission. And, that the appellants do not disagree, appears from the statement in their brief that "Appellants do not contend that under all circumstances the court would be deprived of jurisdiction in a 298 proceeding over a subject matter which would ordinarily be resolved by arbitration."

We are not obliged to determine here whether there is any nexus between the number of applicants to be included in the second class and the enforcement of the commission's order. Nor do we do so. Sufficient that the parties, in adopting the program designed to end discriminatory practices agreed to fix that number. It may very well be that at the time of reaching their accord the parties did feel that there was some relationship between the number of apprentices to be enlisted and the establishment of effective procedures to end discrimination. Be that as it may, the fact is that the parties did arrive at an agreement to set up the classes and the number thereof. And it is solely because of such agreement that we decide as we do.

In its original decision the court at Special Term stated that at the request of the parties it was retaining jurisdiction over these proceedings. The appellants urge that the retention of jurisdiction does not give the court expanded jurisdiction, and certainly does not give it jurisdiction to determine class size — a subject not specifically touched on by the commission. However, we hold that the court did not go beyond its jurisdiction when it ordered specific measures to be taken to effectuate enforcement of the commission's order though such measures had not been previously ordered by the commission. Nor, in view of the agreement which we find to have been made, can there be any just complaint that one of those measures was a provision fixing the size of the classes of apprentices. True, it is the duty of the commission, and not of the court, to police the activities of the parties and to guard against continued discriminatory practices. That is not to say that the court does not have jurisdiction upon proper representations to take whatever steps may be necessary to enforce the orders theretofore made. There is no need, however, for the court to reserve jurisdiction. We assume that the commission will discharge its obligations of enforcement and that, pursuant to section 298 of the law, it will come to the court, whenever necessary, for assistance in that task. We may add that the court, under the specific power given to it by CPLR 5015, or indeed under its inherent powers, may modify its order if changed circumstances indicate the necessity for so doing.

In view of the discussion had upon argument it may be well for us to point out that the order of the court does not look toward the integration of the union. There is a distinction between compelling integration and the termination of discrimination. A party has the right not to be excluded from the union because of race, creed, color, or religious persuasion. Quite different would be the assertion of a right — nonexistent under the law against discrimination — to have the union take affirmative steps looking toward integration. The law does not call for it, nor does the order appealed from require it. The order of the Commission on Human Rights did not call for the parties to do any more than to cease and desist from continuing discrimination. That order must be enforced, and be enforced herewith. That is what the order under consideration calls for and that is what the court was seeking to accomplish.

Accordingly, the order dated July 26, 1965, directing the establishment of a new class of 65 apprentices should be affirmed,

without costs and without disbursements. Settle order providing for a new date for the institution of the second class.

Rabin, J. P., Stevens, Steuer and Staley, JJ., concur.

Order, entered July 26, 1965, directing the establishment of a new class of 65 apprentices, unanimously affirmed, without costs and without disbursements. Settle order on notice providing for a new date for the institution of the second class.